UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

Eastern District of Kentucky
**FILED**

JAN 17 2025

AT LONDON
Robert R. Carr
CLERK U.S. DISTRICT COURT

UNITED STATES OF AMERICA

V.                               INFORMATION NO. 6:24-CR-083-CHB

JOSHUA DANIEL PENNINGTON

\* \* \* \* \*

THE UNITED STATES ATTORNEY CHARGES:

## BACKGROUND

At all relevant times:

1.   The United States Small Business Administration (SBA) was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

2.   As part of this effort, the SBA provided for direct loans as well as loans through banks, credit unions and other lenders. These loans had government-backed guarantees. In addition to traditional SBA funding programs, the Coronavirus Aid, Relief, and Economic Security (CARES) Act, which was signed into law in March 2020,

established several new temporary programs and provided for the expansion of others to address the COVID-19 outbreak.

3. One of these new programs was the SBA Paycheck Protection Program (PPP), which was a loan designed to provide a direct incentive for small businesses to keep their workers on the payroll during the pandemic. To obtain a PPP loan, a qualified business was required to submit an application signed by an authorized representative of the business. The PPP loan application required the business representative to acknowledge the program rules and make certain affirmative certifications including that economic uncertainties necessitated their loan requests for continued business operations. In the PPP loan application, the applicant was required to provide facts about the respective business, which included: its average monthly payroll expense and number of employees. Applicants certified the information in the application and all supporting documents were true and accurate. The application required certification that knowingly making a false statement to obtain a loan from the SBA may constitute a criminal offense. Lenders would calculate the loan amount the small business was eligible to receive based on these submissions. PPP loans were designed to be entirely forgivable if the business spent the proceeds on authorized expenses.

4. The CARES Act also expanded the Economic Injury Disaster Loan (EIDL) program, which provided loan assistance for businesses. The program was designed to provide economic relief to small businesses that were experiencing a temporary loss of revenue.

5. The EIDL program was directly managed by the SBA. Applicants applied for EIDL loans directly through the SBA using an online portal. The EIDL application process required applicants to truthfully answer questions about their businesses, including the cost of goods sold and gross revenues for the prior 12 months from the date of the disaster, and electronically certify that the information provided was accurate. Applicants were warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

6. SBA-guaranteed EIDL funds were issued directly from the United States Treasury. EIDL proceeds were permitted to be used to pay normal operating expenses such as rent, utilities, and payroll; however, such loan proceeds were not intended to replace lost sales or profits or for the expansion of a business.

7. At all relevant times, **JOSHUA DANIEL PENNINGTON** was a resident of the Eastern District of Kentucky.

### COUNT 1
### Conspiracy to Commit Money Laundering
### 18 U.S.C. § 1956(h)

8. Paragraphs 1 through 7 are re-alleged and incorporated by reference as if fully set forth herein.

9. Beginning in or about May 2020 and continuing to June 10, 2021, in Laurel County, in the Eastern District of Kentucky, and elsewhere,

## JOSHUA DANIEL PENNINGTON

knowingly and voluntarily conspired and agreed with Nicole Marcelle Pennington to violate 18 U.S.C. § 1957 by knowingly engaging in or attempting to engage in a monetary transaction in criminally derived property of a value greater than $10,000, that was derived from specified unlawful activity.

### Manner and Means

The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

10. Nicole Marcelle Pennington submitted numerous PPP and EIDL applications on behalf of fictitious companies and companies no longer in operation at the time of the COVID-19 disaster declarations. She also submitted PPP and EIDL applications on behalf of real businesses that contained material false statements. Many of these application packages included false supporting documentation. In total, Nicole Marcelle Pennington fraudulently obtained $3,000 in EIDL advances and $1,087,498.35 in PPP and EIDL loans.

11. The SBA advance and loan proceeds were directly deposited into TMA Industries LLC's PNC Bank Account *4202 and **JOSHUA DANIEL PENNINGTON's** PNC Bank Account *3696. Both Nicole Marcelle Pennington and **JOSHUA DANIEL PENNINGTON** had access to these bank accounts.

12. After the SBA loan proceeds were deposited, Nicole Marcelle Pennington and **JOSHUA DANIEL PENNINGTON** spent the SBA loan proceeds on personal expenses. Nicole Marcelle Pennington used the SBA loan proceeds to pay for a Viking River Cruise trip while **JOSHUA DANIEL PENNINGTON** withdrew cash, transferred

money between bank accounts, purchased automobiles and motorcycles, paid off mortgages and other loans, paid for a kitchen renovation, and paid for Nicole Marcelle Pennington's plastic surgery. Together, they used the SBA loan proceeds to remodel their kitchen. Many of these transactions exceeded $10,000 in value.

All in violation of 18 U.S.C. § 1956(h).

## FORFEITURE ALLEGATION
## 18 U.S.C. § 982(a)(1)

1.  By virtue of the commission of the offense alleged in the Information, **JOSHUA DANIEL PENNINGTON** shall forfeit to the United States any and all property, real or personal, involved in the violation of 18 U.S.C. §§ 1956 and/or 1957 and any property traceable to such property. Any and all interest that **JOSHUA DANIEL PENNINGTON** has in this property is vested in and forfeited to the United States pursuant to 18 U.S.C. § 982(a)(1).

2.  The property to be forfeited includes, but is not limited to, the following:

**VEHICLES:**
a. 2020 Cadillac Escalade with VIN 1GYS4BKJ2LR287995;
b. 2019 Harley-Davidson FLTRXS Road Glide Special with VIN HD1KTP1XKB648790;
c. 2019 Harley-Davidson FLHCS Heritage Classic with VIN 1HD1YBK22KB017153; and
d. 2017 Infiniti QX80 with VIN JN8AZ2NE2H9156238.

**MONEY JUDGMENT:**
A forfeiture money judgment in the amount of $1,090,398.35, which represents the amount of proceeds that the Defendant obtained as a result of the violation and/or the value of property involved in the violation, offset by the net proceeds realized from the sale or disposition of any directly forfeited property.

3.      If any of the property listed above, as a result of any act or omission of the Defendant(s), (A) cannot be located upon the exercise of due diligence; (B) has been transferred or sold to, or deposited with, a third party; (C) has been placed beyond the jurisdiction of the court; (D) has been substantially diminished in value; or (E) has been commingled with other property which cannot be divided without difficulty, the United States shall be entitled to forfeit substitute property pursuant to 21 U.S.C. § 853(p).

*[signature]* for
CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

## PENALTIES

**COUNT 1:** Imprisonment for not more than 10 years, fine of not more than the greater of $250,000 or twice the value of the funds involved in the transactions, and supervised release for not more than 3 years.

**PLUS:** Mandatory special assessment of $100 per count.

**PLUS:** Restitution, if applicable.

**PLUS:** Forfeiture, if applicable.